IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------x
                                                 :
UNITED STATES OF AMERICA         :    CVB NO. 174655
                                                 :
v.                                               :
                                                 :
MILLEDGE GREEN                   :    DATE: OCTOBER 18, 2013
-------------------------------------------------x
```

MEMORANDUM OF DECISION

A petty offense trial was held before this Magistrate Judge on October 7, 2013; Corporal Frank Podpolucha of the Veterans' Affairs Police Department ["VAPD"] and defendant, who represented himself on a pro se basis, both testified.

I.  FINDINGS OF FACT

Podpolucha testified that he was working the day shift, from 8:00 a.m. to 4:00 p.m. at the VA Hospital in West Haven, Connecticut on September 25, 2012, when he received a "Code 2," meaning a disturbance, on the fourth floor of Building 2, specifically that there had been a physical confrontation between a patient and a nurse, in which the patient forced a nurse back with his chest.  Podpolucha rushed to the urology department, where he was directed to the back hallway and found defendant there, exiting a doctor's office. Podpolucha was advised that defendant had arrived at the urology department without a scheduled appointment and had "pushed his way in."

Podpolucha testified that he asked defendant for identification, which he refused, and defendant then walked past Podpolucha, heading for the exit.  As defendant was walking near the nurse's station, Podpolucha ordered defendant to stop, and this time he complied, although he still refused to provide identification,

instead keeping his hands in his front pockets.  Podpolucha testified that the distance between the doctor's office in the back hallway and the nurse's station was about two car lengths, and that the waiting room, beyond the nurse's station, was "filled" with about twenty-five people.  Podpolucha considered this to be a "dangerous" situation, in that defendant could have had a concealed weapon in his pocket.  Podpolucha testified that he ordered defendant to remove his hands from his pockets and when defendant failed to do so, engaging in "passive resistance,"  Podpolucha "physically removed [defendant's] hands."  Podpolucha testified as to a "slight struggle" between the two of them, but then Podpolucha "gained control" of the situation and placed defendant in handcuffs.  Podpolucha testified that defendant had "affected the normal operations of the urology office" at the VA Hospital.  Podpolucha then brought defendant to the VAPD Headquarters in Building 2, at which time he gave defendant the Violation Notice for disorderly conduct.[1]

Podpolucha testified upon cross-examination that he did not witness the physical contact between defendant and the nurse, and that when he first encountered defendant, defendant was in the back hallway at the doorway to a doctor's office and then began walking toward the nurse's station.  Podpolucha clarified that defendant had been acting in a "passive aggressive" manner, first by not responding to Podpolucha's request for identification and by placing his hands in his pockets, and then by going "limp" and not responding.  Podpolucha also clarified on cross-examination that he had placed defendant against the wall while he was attempting to pull defendant's hands out of his pockets; as he was standing behind

---

[1] Although Podpolucha testified that plaintiff was also charged with physical contact with an employee and resisting arrest, the Violation Notice only mentions disorderly conduct.

defendant, he could not, at first, see defendant's hands. At some point, Podpolucha was assisted by two Sergeants, who placed the handcuffs on defendant with his arms behind him.  Podpolucha further testified that defendant had failed to comply "with repeated requests" and "multiple directions."

Defendant, who is a veteran, testified that he went to the urology department because he had been experiencing pain in his testicles.  He testified that he explained to the nurse that he did not have an appointment, but that he wanted to be seen by a urologist that day or later that week.  The nurse, in turn, advised him that he needed to consult with his primary care physician ["PCP"], but defendant responded that his PCP was not at the VA Hospital and was not available.  Defendant testified that he then told the nurse that he had just relocated from New York, that he was in considerable pain, and that he needed to see a physician.  In response, the nurse repeated that he needed to be seen by a PCP; defendant testified that he asked the nurse for the telephone number of a PCP, and further asked her to call to see if that doctor was available; defendant testified that the nurse then walked away from the nurse's station.

Defendant continued that a second nurse then replaced the first nurse, and that this second nurse, who was "temporarily filling in," did not understand why the first nurse did not bother to ask the urologists if any of them could fit defendant into their schedules.  Defendant testified that the first nurse returned, at which time defendant again asked her if he could be seen by a doctor that day, to which the nurse responded, "No way, and I wouldn't do it."  Defendant testified that at the time, three or four doctors were standing in the hallway, and one of them agreed to

see defendant later that day; he advised defendant to wait in the waiting room for him.

Defendant further testified that while he was talking with the doctor, he heard the emergency call over the intercom system, and the first nurse took "ten steps down the hallway" and "got into [defendant's] face." He added that there were three or four nurses standing around, and defendant put his hands in his pockets in order to control himself. Defendant then asked the nurse if she was going to punch him, as which time people in the area "stepped back." Defendant testified that he was not "hearing anything because I was trying to restrain myself." Defendant testified that he then noticed three or four officers from the VAPD, and he kept his hands in his pockets to "restrain" himself. He further testified that he walked away and did not touch anyone. Defendant testified that the police officers "slammed [his] head against the wall," and that one kept "pulling on [his] handcuffs" so that he still has marks on his wrist. Defendant agreed that he was taken downstairs, at which time the handcuffs were removed.

Upon cross-examination, defendant conceded that he was "angry" when the first nurse "came down the hall aggressively," but denies that he ever touched her. He further testified that he was "aware" of the officers approaching him, but he does not remember any commands from them. He testified that the police officers stopped the doctor from seeing him then, but that he did see a doctor two hours later; he explained that one of the doctors came downstairs to see him, defendant later went back upstairs to the urology department, and the doctor then instructed defendant to meet him at the ER of the VA Hospital, which he did. Contrary to Podpolucha's

testimony, defendant contends that there was only one person (who was a care giver for a patient) in the waiting room of the urology department at that time.

## II. CONCLUSIONS OF LAW

Defendant was charged with a violation of 38 C.F.R. § 1.218(b)(11), which makes illegal at VA property the following conduct: "Disorderly conduct which . . . obstructs the usual use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility."

It is not disputed that this event occurred on VA property. Section 1.218(b)(11) has been construed in a number of published decisions, with factual situations similar to those here. For example, in U.S. v. Williams, No. 89-3720, 1990 WL 811 (6th Cir. Jan. 8, 1990), the defendant, Williams, was a police officer at a VA hospital in Cleveland, who had a verbal confrontation with his supervisor in the supervisor's officer, during which defendant threatened the sergeant. Id. at *1. The verbal confrontation "recommenced" later in the emergency room admitting office, during which defendant Williams again swore at his supervisor. Id. A physician in the admitting area asked if she could leave the area because she was "frightened" by defendant Williams' behavior. Id. The VA police eventually were called in, defendant Williams voluntarily left the area, and was charged with disorderly conduct under this regulation. Id. In appealing his conviction, defendant Williams argued that there was insufficient evidence to convict him, because the witnesses agreed that his conduct "did not agitate patients in the admitting area." Id. at *3. The Sixth Circuit disagreed, however, because defendant Williams' profanities and threats to

his supervisor "distracted medical personnel from their duties [which] is sufficient to find [defendant] guilty of disorderly conduct beyond a reasonable doubt." Id.[2]

In this case, there is only one factual dispute – whether there were twenty-five people in the waiting room, as Podpolucha testified, or only one, as defendant testified.[3] The remainder of the facts are simply a matter of interpretation, as the Magistrate Judge finds that both witnesses testified honestly and sincerely, from his own perspective of the incident. As a trained law enforcement officer, Podpolucha had legitimate concerns about defendant's behavior – his continual refusal to provide identification, his hands remaining firmly in his pockets, where he easily could have concealed a weapon, and his going "limp" and not responding. On the other hand, defendant had reason to be on edge – he clearly was in pain, and the first nurse's only response to him was to place obstacles in his way to prevent him from seeing a urologist. To his credit, defendant kept his hands firmly in his pockets in order to "restrain" himself, and he did not recall hearing any commands from the three police officers. However, by his own testimony, defendant concedes that there were three or four doctors in the back hallway watching defendant's unsuccessful interactions with the first nurse, there were three or four nurses watching as the first nurse took "ten steps down the hallway . . to [get] into [defendant's] face," and when defendant

---

[2]To his credit, defendant's behavior here is not as extreme as either the defendant in Williams, or as the defendant in U.S. v. Green, No. 93-50575, 1994 WL 327727 (9th Cir. July 7, 1994). In the latter case, a patient at the VA Hospital in Los Angeles "became surly and uncooperative[]" in the waiting room, he yelled at the admissions chief, he refused to listen to the VA Police's instructions to cooperate and leave the facility, and he spat in the face of one of the officers. Id. at *1. The Ninth Circuit held that "[e]vidence of his conduct amply supports his conviction[]" because defendant was "boisterous and abusive before he was restrained or charged." Id.

[3]The Court need not make a decision as to which number is correct.

6

asked the first nurse if she was going to punch him, people in the area "stepped back." All these events, as Podpolucha testified, "affected the normal operations of the urology office" at the VA Hospital. In the words of the Sixth Circuit, defendant here "distracted medical personnel from their duties [which] is sufficient to find [defendant] guilty of disorderly conduct beyond a reasonable doubt." Williams, 1990 WL 811, at *3.

Therefore, while defendant clearly meant no harm by his actions, and in fact, by his restraint, prevented the situation from escalating further, the Government has proven beyond reasonable doubt that defendant violated 38 C.F.R. § 1.218(b)(11) by engaging in conduct that "tends to impede or prevent the normal operation of a service or operation of the facility." The defendant is thus found guilty.

Pursuant to FED. R. CRIM. P. 58(c)(3), sentencing is scheduled for **October 30, 2013, at 2:30 p.m.**, in 141 Church Street, Courtroom 5, New Haven, Connecticut. If the Assistant U.S. Attorney or defendant wishes to submit additional information, they may do so **on or before October 25, 2013**.

Dated at New Haven, Connecticut, this 18th day of October, 2013.

/s/ Joan G. Margolis, USMJ
Joan G. Margolis
U.S. Magistrate Judge